IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HARVEY P. JAMISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 05-26 (GMS) |
| RENT-A-CENTER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

## I.    INTRODUCTION

On January 19, 2005, Harvey P. Jamison ("Jamison") filed this *pro se* civil rights action against his former employer, Rent-A-Center, Inc. ("RAC"), alleging that it violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) *et seq*., by discriminating against him because of his race. Jamison also alleges that RAC has violated the Americans With Disabilities Act of 1991, the Handicapped Persons in Employment Protections Act and the Delaware Discrimination in Employment Act, based on his disability. Presently before the court is RAC's motion to dismiss for lack of subject matter jurisdiction. For the following reasons, the court will grant the motion.

## II.    BACKGROUND

RAC is a nationwide rent-to-own company that rents household goods to consumers through retail locations. (*See* D.I. 9, Affidavit of Donna Crump ("Crump Affidavit") ¶ 3.) One such retail location is in Newark, Delaware. (D.I. 2 ¶ 3.) In August 2002, RAC's Newark location hired Jamison as an electronic technician. (D.I. 2, Department of Labor of the State of Delaware ("DDOL") attachment explaining claims.) It is RAC's policy to have new employees execute a mutual agreement to arbitrate claims ("Arbitration Agreement") prior to starting their employment.

(D.I. 9, Crump Affidavit ¶ 4.)  Thus, on August 1, 2002, Jamison signed an Arbitration Agreement, and began working for RAC.  (*Id.*)

According to Jamison, he informed his manager, Ricky Sosa ("Sosa"), about a disability that he had, upon beginning his job at RAC.  (D.I. 2, DDOL attachment explaining claims.)  He then performed his duties as instructed until February 2004, when Sosa allegedly began to "scrutinize [his] work, write [him] up, and treat [him] differently than Greg P.," a Hispanic technician.  (*Id.*)

Jamison alleges that in February 2004, Sosa asked him to lift pallets of air conditioners.  He lifted three pallets and declined to lift more because of his disability.  (*Id.*)  When Jamison declined to continue lifting pallets, Sosa allegedly requested medical documentation regarding his restrictions which, according to Jamison, he gave to Sosa "the next day."  (*Id.*)

Jamison further alleges that Sosa's harsh treatment of him escalated after the lifting incident. For example, Sosa allegedly began to ask Jamison to work on Saturdays, "while Greg did not have to work," "he requested more medical documentation from the company doctor," and he "granted 3 days bereavement privileges to Greg P. and insisted that [Jamison] receive only 1 day."  (*Id.*)  On March 4, 2004, RAC terminated Jamison for allegedly violating a company policy that prohibits employees from working for RAC competitors.  (*Id.*)

According to Jamison, his termination for the alleged violation and conflict of interest was made with no investigation, and the decision to terminate his employment was based on false accusations.  (*Id.*)  Lastly, he alleges that the real reason he was terminated was because of his race and disability, not the alleged conflict of interest.  (*Id.*)

Subsequent to his termination, Jamison filed a charge of discrimination with the DDOL.  In a report, dated October 22, 2004, the DDOL found that there was "no reasonable cause to believe

that an unlawful employment practice ha[d] occurred." (D.I. 2, DDOL No Cause Determination.) The DDOL issued the No Cause Determination and Dismissal based on the fact that Jamison submitted evidence that "he discussed the possibility of outside employment with a competitor of [RAC]," which led to his discharge. (*Id.*) On May 18, 2004, Jamison filed a similar claim with the Equal Employment Opportunity Commission (the "EEOC"). In a "Dismissal and Notice of Rights" form, mailed on July 5, 2005, the EEOC adopted the findings of the DDOL, and gave Jamison the right to sue in federal court.[1]

## III.    STANDARD OF REVIEW

An attack pursuant to Federal Rule of Civil Procedure 12 (b)(1) challenges the jurisdiction of the court to address the merits of the complaint. *Lieberman v. Delaware*, No. CIV. A. 96-523 GMS, 2001 WL 1000936, at *1 (D. Del. Aug. 30, 2001). Such a motion may challenge the court's jurisdiction facially, based on the legal sufficiency of the claim, or factually, based on the sufficiency of jurisdictional fact. *Mortensen v. First Fed. Sav. & Loan*, 439 F.2d 884, 891 (3d Cir.1977) (distinguishing standard governing each type of challenge); *see Lieberman*, 2001 WL 1000936, at *1 (finding facial challenge where defendant did not dispute facts alleged in complaint that supported court's subject matter jurisdiction). The case at hand presents a facial challenge because RAC does not attack the merits of Jamison's claims. Accordingly, the court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of Jamison.

---

[1] Jamison brought this action while his claim was still pending with the EEOC, thereby failing to exhaust his administrative remedies because he could not attach a Right to Sue Letter to his complaint. However, because the right to sue letter issued before briefing on the motion to dismiss was complete and Jamison subsequently filed the letter, the court finds that he has cured his deficiency. Additionally, RAC's reply brief (D.I. 12) waives its argument with respect to failure to exhaust administrative remedies. Thus, the court will not dismiss the case based on Jamison's failure to include the Right to Sue Letter.

*Mortensen*, 549 F.2d at 891.

## IV.    DISCUSSION

RAC has moved to dismiss Jamison's complaint for lack of subject matter jurisdiction, asserting that Jamison has a clear and unambiguous obligation to arbitrate which arose when he executed the Arbitration Agreement.  (D.I. 12, at 2.)  That is, RAC asserts that Jamison signed a valid Arbitration Agreement after it hired him, and that claims arising from his employment or termination, including racial and/or disability discrimination are included in the terms of the Arbitration Agreement.  (D.I. 8, at 5-6.)  Thus, according to RAC, Jamison agreed that the Federal Arbitration Act would govern "interpretation, enforcement, and all proceedings pursuant to [the Arbitration] Agreement."  (*Id.* at 5.)

Conversely, Jamison maintains that he is entitled to seek relief from this court pursuant to the Arbitration Agreement.  (D.I. 11, at 2.)  While not clear to the court, Jamison seems to contend that he has filed claims for race and disability discrimination, as well as claims for unfair competition and conflict of interest.  (*Id.*)  Jamison further contends that his alleged claims for unfair competition and conflict of interest are not covered by the Arbitration Agreement.  (*Id.*)  The court will address each of these contentions in turn.

### A.    Jamison's Discrimination Claims

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  Pursuant to the FAA, the court should stay an action and compel arbitration when, in a pending suit, "any issue is referable to arbitration." 9 U.S.C. §§ 3,4.  A district court also has the discretion to dismiss an action if all the issues raised are arbitrable and must be submitted to arbitration.  *See BAE Sys. Aircraft Controls, Inc. v. Eclipse*

4

*Aviation Corp.*, 224 F.R.D. 581, 585 (D. Del. 2004) (citing cases).

Before a court can compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (2003), it must determine (1) whether the parties entered into a valid arbitration agreement, and (2) whether the relevant dispute is arbitrable, meaning that it falls within the language of the arbitration agreement. *See John Hancock Mutual Life Insurance Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998) (stating that where a dispute regarding an arbitration agreement is brought before a district court, the scope of the court's authority to become involved is defined by the FAA. *Id.* at 136-37)). In conducting its review, a court should apply the ordinary principles of contract law. *See* 9 U.S.C. § 2; *First Options of Chicago v. Kaplan*, 514 U.S. 938, 945 (1995) (To determine "whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern formation of contracts.") If a contract contains an arbitration clause, a presumption of arbitrability arises. This presumption may be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *See Sharon Steel Corp. v. Jewell Coal & Coke Co.*, 735 F.2d 775, 778 (3d Cir. 1984). In addition, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see First Liberty Inv. Gp. v. Nicholsberg*, 145 F.3d 647, 653 (3d Cir. 1998); *Stateside Mach. Co. v. Alperin*, 591 F.2d 234, 240 (3d Cir. 1979) ("doubtful issues regarding the applicability of an arbitration clause are to be decided in favor of arbitration").

In the present case, Jamison does not attack the validity of the arbitration clause of the Arbitration Agreement, but does assert that its claims fall outside the contours of that agreement. Because the scope of the arbitration agreement is at issue, the court may "'engage in a limited

review to ensure that the dispute is arbitrable'" and, if appropriate, enter an order to compel or enjoin arbitration. *John Hancock Mutual Life Insurance Co.*, 151 F.3d at 137 (quoting *PaineWebber v. Hartman*, 921 F.2d 507, 511 (3d Cir. 1990)).

After having considered the parties' positions and submissions, including the language of the Arbitration Agreement that Jamison signed, the court concludes that the claims in Jamison's complaint fall within the contours of the agreement.  As a preliminary matter, the court finds that because the agreement Jamison signed is an "Arbitration Agreement," it contains an arbitration clause to which the presumption of arbitrability attaches.  Thus, the only question for the court is whether, when applying ordinary principles of contract law, the presumption is overcome.  Here, it is not, because the language of the Arbitration Agreement is clear and unambiguous, and states that claims arising out of race and disability discrimination are covered.[2]  *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("Absent some ambiguity in the agreement, however, it is the language of the contract that defines the scope of disputes subject to arbitration.")  Further,

---

[2] The Arbitration Agreement provides the following:

> The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present, or future, whether or not arising out of my application for employment, assignment/employment, or the termination of my assignment/employment that the Company may have against me or that I may have against . . . the Company. . . .

> . . . . The claims covered by this Agreement include, but are not limited to: claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; *claims for discrimination* (including, but not limited to, *race*, sex, sexual harassment, sexual orientation, religion, national origin, age, workers' compensation, marital status, *medical condition, handicap, or disability*). . . .

D.I. 9 Ex. A, at 1) (emphasis added).

6

according to the plain language of the Arbitration Agreement, the only claims that are not covered

by the Arbitration Agreement are those for workers' compensation benefits and unemployment

compensation benefits, or claims by the Company for injunctive relief and/or equitable relief for

unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential

information. (D.I. 9 Ex. A, at 1.) Thus, in the present case, the court cannot say with positive

assurance that the Arbitration Agreement Jamison signed is not susceptible of an interpretation that

covers the asserted dispute. *See Sharon Steel Corp.*, 735 F.2d at 758.   As such, Jamison's

discrimination claims are arbitrable.

### B.      Jamison's Unfair Competition Claims

Jamison's answering brief seems to state that he has filed a claim for unfair competition and

conflict of interest that is not arbitrable. The court disagrees, because Jamison's pleadings do not

contain any allegations regarding unfair competition and conflict of interest. Rather, his pleadings

state only that RAC informed him that he was terminated because of a conflict of interest.

However, even assuming that Jamison had alleged unfair competition, the court finds that,

as an employee, he would have no basis for bringing such a claim. Unfair competition claims

usually arise under section 43 of the Lanham Act, 15 U.S.C. § 1125, in trademark infringement or

false advertising cases involving competing companies or competing products. In a Lanham Act

case, a plaintiff must show: (1) the defendant made false or misleading statements as to its product,

or those of the plaintiff; (2) there was actual deception or at least a tendency to deceive a substantial

portion of the intended audience; (3) the deception was material in that it is likely to influence

purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a

likelihood of injury to the plaintiff, in terms of declining sales, loss of good will, etc. *Allen v.*

*Howmedica Leibinger, Inc.* 197 F. Supp. 2d 101, 108 (D. Del. 2002) (citing *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994)). Jamison has not alleged any of the five requirements in his complaint. Nor can he show any of the requirements for an unfair competition claim against RAC because it would not make sense – the claim would mean that RAC was competing against itself. The section of the Arbitration Agreement that Jamison cites in his answering brief supports this conclusion, as it contemplates only a situation in which the company could file a claim against an employee (or former employee) for unfair competition.[3] Thus, the court finds that Jamison has brought only discrimination claims against RAC which, as previously discussed, are arbitrable. Accordingly, the court will grant RAC's motion to dismiss and compel arbitration.

Dated: August 1, 2005                                    /s/ Gregory M. Sleet
                                                         UNITED STATES DISTRICT JUDGE

---

[3] The section of the Arbitration Agreement that Jamison cites states the following:

> "[a]lso not covered are claims by the *Company* for injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information, as to which either party may seek and obtain relief from a court of competent jurisdiction."

(D.I. 9 Ex. A, at 1) (emphasis added).

8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HARVEY P. JAMISON,                      )
                                        )
                 Plaintiff,             )
                                        )
        v.                              )
                                        )        Civil Action No. 05-26 (GMS)
RENT-A-CENTER, INC.,                    )
                                        )
                 Defendant.             )

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY

ORDERED that:

1.      RAC's motion to dismiss is GRANTED.

2.      This case shall be submitted to arbitration under the auspices of the American

Arbitration Association, Judicial Arbitration & Mediation Services/Endispute, or any

other service to which the parties agree.

3.      The plaintiff's claims against RAC are dismissed with prejudice.


Dated: August 1, 2005                         /s/ Gregory M. Sleet_____
                                              UNITED STATES DISTRICT JUDGE